# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

## CASE NO.: 22-14129

## LOWER TRIBUNAL CASE NO.: 1:21-cv-23148-MGC

## LEIGH ROTHSCHILD,

**Plaintiff/Appellant**

**vs.**

## GREAT NORTHERN INSURANCE COMPANY,

**Defendant/Appellee.**

_____

## APPELLANT'S INITIAL BRIEF
_____

**By:** *_/s/ Josef Timlichman_*
**Josef Timlichman, Esq.**
**Florida Bar No.: 121265**

**Josef Timlichman Law, PLLC.**
**Attorneys for Plaintiff**
**2999 NE 191st Street, Suite 530**
**Aventura, FL 33180**
**Phone: (305) 748-3789**
**Facsimile: (305) 847-2441**
**josef@lawnowfl.com**

## CERTIFICATE OF INTERESTED PARTIES

Undersigned counsel for Appellant, Leigh Rothschild ("Appellant"), certifies that the following is a complete list of all known persons and entities with an interest in the outcome of this case:

The Honorable Darrin P. Gayles, United States District Judge, Southern District of Florida

Hicks, Porter, Ebenfeld & Stein, P.A, and its attorneys

Dinah Stein, Esq., Counsel for Appellee

Great Northern Insurance Company, Appellee

Josef Timlichman Law, PLLC, and its attorneys

Josef Timlichman, Esq., Counsel for Appellant

Leigh Rothschild, Appellant

Evan Holober, Counsel for Defendant

John David Dickenson, Counsel for Defendant

Cozen O'Connor, Counsel for Defendant

## IDENTIFICATION OF THE PARTIES

Leigh Rothschild will be referred to as the Appellant. Great Northern

Insurance Company will be referred to as the Appellee.

## STATEMENT REQUESTING ORAL ARGUMENT

Appellant, pursuant to Fed. R. App. P. 34, respectfully requests oral argument be heard on this Appeal. The reason for this request is due to the complexity surrounding the issues of this Appeal. Specifically, as part of his Appeal Appellant is respectfully arguing that the district court misinterpreted Appellant's expert engineer's findings. By allowing oral argument on this Appeal, Appellant will be afforded the opportunity to clarify his expert's findings and answer any questions this Honorable Court may have regarding them. Further, in conjunction with this reasoning is that the district court did not address in its opinion, the Concurrent Causation Doctrine that Appellant argues should apply to this case. By allowing Appellant to give oral arguments, it will enable him to discuss in further detail how his expert's findings address the concurrent causes that could apply to this loss.

## TABLE OF CONTENTS

Cover Page………………………………………………………………………i

Certificate of Interested Parties……………………………………………...…....ii

Identification of the Parties……………………………………………………..iii

Statement Requesting Oral Argument…………………………………………..iv

Table of Contents…………………………………………………………………..1

Table of Citations………………………………………………………………...2

Statement of the Subject Matter and Appellate Jurisdiction………………………3

Statement of Issues…………………………………………………………………4

Statement of the Case and Facts…………………………………………………6

Standard of Review…………………………………………………………………12

Summary of Argument……………………………………………………………13

Argument

I.      The District Court Erred in Granting Appellee's Motion
for Summary Judgment Because the Concurrent Causation Doctrine
Bars Entrance of Summary Judgment When One of the Causes of
the Loss is a Covered Peril…………………………………………………15

II.     The Mend The Hold Doctrine Bars Appellee From Raising Additional Policy
        Exclusions Outside The Denial Letter……………………….……19

Conclusion………………………………………………………………….…21

Certificate Of Compliance With RULE 32(g)(1)……………………………...22

Certificate Of Service……………………………………………………………23

## TABLE OF CITATIONS

<u>**Case Law**</u>

*Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc*.,
    420 F.3d 1317, 1330 (11th Cir. 2005)……………………………………….13,15

*Harbor Ins. Co. v. Cont'l Bank Corp*.,
    922 F.2d 357, 362 (7th Cir. 1990)……………………………………………14

*Jones v. Federated Nat'l Ins. Co.*,
    235 So. 3d 936 (Fla. Dist. Ct. App. 2018)…………………………………….17

*MLB v. Morsani*,
    790 So. 2d 1071, 1076 (Fla. 2001)…………………………………..……..14,17

*Paulucci v. Liberty Mut. Fire Ins. Co*.,
    190 F.Supp.2d 1312, 1318 (M.D. Fla. 2002)………………………………13,16

*Sebo v. Am. Home Assurance Co.,*
    208 So. 3d 694, 697 (Fla. 2016)…………………………………...…………13,15,16

*Southchase Parcel 45 Cmty. Ass'n, Inc. v. Garcia*,
    844 So. 2d 650, 651 (Fla. 5th Dist. Ct. App. 2003)…………………………..14,17

*Southern-Owners Ins. Co. v. Easdon Rhodes & Assocs. LLC*,
    872 F.3d 1161, 1163 (11th Cir. 2017)……………………………………..12

*Trans Ocean Container Corp. v. Yorkshire Ins. Co. Ltd. "C" Account*,
    81 F.Supp.2d 1340, 1347 (S.D. Fla. 1999))…………………………………..18

*Wallach v. Rosenburg*, 527
    So.2d 1386 (Fla. 3d DCA 1988)……………………………………………13,15,16

<u>**Rules and Statutes**</u>

Fed. R. App. P. 4(a)(1)(A)……………………………………………………3

Fed. R. App. P. 34…………………………………………………………………4

28 U.S.C. § 1291…………………………………………………….…………….3

28 U.S.C. §1332……………………………………………………………………3

## STATEMENT OF THE SUBJECT MATTER AND
## APPELLATE JURISDICTION

Federal courts have diversity jurisdiction over this dispute pursuant to 28 U.S.C. §1332. The appeal is from a final order on summary judgment that disposes of all of Appellant's claims, and appellate jurisdiction over the district court's final judgment therefore exists pursuant to 28 U.S.C. § 1291. The judgment was entered on November 15, 2022, and a timely notice of appeal was filed on December 6, 2022, and a corrected notice of appeal was filed on December 8, 2022. Fed. R. App. P. 4(a)(1)(A).

## STATEMENT OF ISSUES

This is a first party property insurance case. Appellant bought an all-risks residential insurance policy from Appellee. [Doc. 1. Ex. 1]. On or about November 12, 2020, Appellant suffered a loss to his home due to 0.72 inches of rain that fell over a period of three (3) hours. [Doc. 29. Ex. 10. Pg. 20]. Appellant timely filed a claim for coverage of the loss which after a thorough investigation by Appellee was subsequently denied on February 11, 2021. [Doc. 36. Ex. 4. Pg. 1-2]. In denying Appellant's claim, Appellee listed two policy exclusions in its denial letter:

> **Gradual or Sudden Loss.** We do not provide coverage for the presence of wear and tear, gradual deterioration, rust, bacteria, corrosion, dry or wet rot, or warping, however caused, or any loss caused by wear and tear, gradual deterioration, rust, bacteria, corrosion, dry or wet rot, or warping. We also do not cover any loss caused by inherent vice, latent defect or mechanical breakdown. But we do insure ensuing covered loss unless another exclusion applies.

> **Faulty Planning, Construction, or Maintenance**. We do not cover any loss caused by the faulty acts, errors, or omissions of you or any other person in planning, construction or maintenance. It does not matter whether the faulty acts, errors or omissions take place on or off the insured property. But we do insure ensuing covered loss unless another exclusion applies. "Planning" includes zoning, placing, surveying, designing, compacting, setting specifications, developing property and establishing building codes or construction standards. "Construction" includes materials, workmanship, and parts or equipment used for construction or repair. *Id*.

Contrary to Florida's Mend the Hold Doctrine, Appellee attempted to insert four (4) additional policy exclusions through their Affirmative Defenses. [Doc. 1. Ex. 1.]. Florida's Mend the Hold Doctrine prohibits insurers from raising certain matters in

defensive pleadings that were not initially raised in the claim denial letter even in the face of procedural rules favoring liberality of pleading amendments.

Appellant's expert engineer Mario Farnesi testified that Appellant's loss was caused by rainwater on November 12, 2020. [Doc. 29. Ex. 9. Pg. 52]. Appellee's corporate representative testified rainwater intrusion is not an exclusion under the applicable policy and is a covered loss. [Doc. 50. Ex. 5. Pg. 62].

The district court erred in granting Appellee's motion for summary judgment because the Honorable Court failed to apply Florida's long established Concurrent Causation Doctrine and allowing Appellee to rely on additional policy exclusions not delineated within the denial letter as required by the Florida Mend the Hold Doctrine.

Appellant raises the following issue on this appeal:

1)      Whether the district court erred when it failed to apply the Concurrent Causation Doctrine in granting Appellee's Motion for Summary Judgment?

2)      Whether the district court erred when it failed to apply the Mend the Hold Doctrine in considering policy exclusions not included in the denial letter?

3)      Whether Appellee was allowed to change its position from opening coverage and admitting a covered loss to taking an inconsistent position and claiming a non-covered loss during litigation pursuant to the Mend to Hold Doctrine?

4)      Whether the district court erred in granting summary judgment when material questions of fact exist as to the cause of the subject loss.

## STATEMENT OF THE CASE AND FACTS

Appellee issued a policy of property insurance to Appellant with a coverage period of December 5, 2019 to December 5, 2020 under policy number 13815601-01. [Doc. 29. Ex. 2]. Appellee's insurance policy does not have a concurrent causation exclusion. [Doc. 29. Ex. 2].

On November 20, 2020, Appellant's HOA notified Appellant of a leak coming from Appellant's unit above due to a short circuit in the garage below. [Doc. 36. Ex. 2]. The HOA's notice put Appellant on notice of the leak leading to Appellant's discovery of the damage caused by the November 12, 2020 rainfall in the area. [Doc. 36. Ex. 2]. Appellant timely reported the loss to Appellee on November 25, 2020. [Doc. 36. Ex. 2].

On January 12, 2021, Appellee's expert engineer Jeffrey Bradley issued a report, identifying the date of loss as November 25, 2020. [Doc. 36. Ex. 3]. Mr. Bradley's report however, only relies on weather events leading up to November 8, 2020. [Doc. 36. Ex. 3].

On February 11, 2021, Appellee sent Appellant a letter partially *accepting coverage* for water damage to the interior of the garage but denying coverage for damage to Appellant's tiles. [Doc. 50. Ex. 1]. Appellee offered to pay Appellant $1,610.01, however, since that amount fell below the $2500.00 deductible, no payment was issued. [Doc. 50. Ex. 1].

Also on February 11, 2021, Appellee sent Appellant a partial denial letter, identifying November 25, 2020 as the date of loss. [Doc. 50. Ex. 2]. The February

11, 2021 denial letter specifically relies on two policy exclusions for the denial:

> (1) Gradual or Sudden Loss. We do not provide coverage for the presence of wear and tear, gradual deterioration, rust, bacteria, corrosion, dry or wet rot, or warping, however caused, or any loss caused by wear and tear, gradual deterioration, rust, bacteria, corrosion, dry or wet rot, or warping. We also do not cover any loss caused by inherent vice, latent defect or mechanical breakdown. But we do insure ensuing covered loss unless another exclusion applies.

> (2) Faulty Planning, Construction, or Maintenance. We do not cover any loss caused by the faulty acts, errors, or omissions of you or any other person in planning, construction or maintenance. It does not matter whether the faulty acts, errors or omissions take place on or off the insured property. But we do insure ensuing covered loss unless another exclusion applies. "Planning" includes zoning, placing, surveying, designing, compacting, setting specifications, developing property and establishing building codes or construction standards. "Construction" includes materials, workmanship, and parts or equipment used for construction or repair. *Id.*

The Appellant believed the entirety of the claim was a covered loss and pursued a breach of contract claim in State Court. [Doc. 1. Ex. 1]. Appellee then transferred this action to Federal Court based on diversity jurisdiction. [Doc. 1].

On August 23, 2021, Appellee filed its Answer, and contrary to the Mend to Hold Doctrine introduced four (4) additional policy exclusions for the first time in its Affirmative Defenses 1, 3, 5, and 6. [Doc. 1. Ex. 1].

### First Affirmative Defense

> **Wind or hail.** We do not cover any loss caused by wind or hail. We also do not cover any loss caused by rain, snow, sleet, sand or dust whether driven by wind or not, when the direct force of wind or hail damages the building causing an opening in the roof or wall and the rain, snow, sleet, sand or

dust enters through this opening.

### Third Affirmative Defense

**Surface water.** We do not cover any loss caused by:... -run off of water or water borne material from a paved surface, driveway, walkway, patio, or other similar surface.

### Fifth Affirmative Defense

**Structural Movement**. We do not cover any loss to additions and alterations of your condominium unit caused by the setting, cracking, shrinking, bulging, or expansion of bulkheads, pavements, patios, landings, steps, footings, foundations, walls, floors, roofs, or ceilings, or loss to glass that is part of a building, storm door, or storm window, except loss caused by catastrophic ground cover collapse asp provided under Extra Coverages. But we do insure ensuing covered loss unless another exclusion applies.

### Sixth Affirmative Defense

**Damage to outside structures.** We do not cover any loss caused by freezing, thawing, or the pressure or weight of water, ice, or snow, whether driven by wind or not to any: -fence, arbor, pavement, patio, landing, or step; -footing, foundation, wall, or any other structure or devise, that supports all or part of your condominium unit; However, we do insure ensuing covered loss unless another exclusion applies. *Id*.

However, Appellee's Corporate Representative testified it is only relying on

Mr. Bradley's report to support its Affirmative Defenses. [Doc. 50. Ex. 5. Pg. 121].

> 6    Q Are there any other facts aside from those
> 7    observations and the Donan report that Great
>      Northern
> 8    Insurance is relying on in asserting that affirmative
> 9    defense?
> 10   A We are relying on these conclusions of the
> 11   engineer.

But Mr. Bradley's report does not actually discuss, analyze, or make any findings consistent with the policy exclusions relied on in the First, Third, Fifth, and Sixth Affirmative Defenses. [Doc. 36. Ex. 3]. It only analyzes and relies on the Policy exclusions listed in the denial letter. *Id.*

Most importantly Appellant's Corporate Representative testified the claim was not denied due to Hurricane or Tropical Storm Eta; and the claim was being denied for the reasons stated in the February 11, 2021 denial letter only.

> 2    Q In this letter, nowhere takes the position
> 3      that this is not a covered loss because of Hurricane
> 4      Eta. Is that correct?
> 5    A That is correct.

[Doc. 50. Ex. 5. Pg. 31].

Appellant's Corporate Representative also testified that a loss due to *rain is not excluded* under the applicable policy and is a covered loss.

> 22    Q Is rain an exclusion under the policy?
> 23    A No.

[Doc. 50. Ex. 5. Pg. 62].

On June 4, 2022, Appellant's engineer Mario Farnesi issued a report opining as to the cause of loss. [Doc. 29. Ex. 10]. Specifically, Mr. Farnesi's report outlined the rainwater event on November 12, 2020 as the cause of loss and opined that, "Our investigation, inspection, and review of the documents provided, noted the above documented damage to the patio tile floor system and electrical components in the parking garage as a result of water migration caused by a crack in the building structure that damaged the patio's waterproofing system." [emphasis added] [Doc.

29. Ex. 10. Pg. 20].

Mr. Farnesi testified on June 20, 2022 in deposition stating:

23 Q. Understood. Did you identify the water event
24 that happened after Hurricane Eta, but before the date
25 of being notified that you believe could have been the
1 cause to the leak?
2 A. So what I did was I started reviewing
3 precipitation levels, more of an accumulation in a short
4 period. I found from the time that the notification was
5 given would have been on November 12, 2020.
6 Q. So you believe that the water event that you
7 identified on November 12th had produced enough water
8 precipitation to cause the leak that was the cause of
9 the shortage in that electric box.
10 A. I do, just because if it would have been prior
11 to that I think the -- what caused the notification to
12 be given would have occurred earlier to that as well.
13 Q. Got it. And your scope of inquiry was not
14 anything to do with the building spalling or any of
15 that. That was something that you just happen to notice
16 on your inspection?
17 A. Correct. Yes. That was just something I
18 observed when I was there.
19 Q. And respectfully, you are not a structural
20 engineer.
21 A. No, I am not.

[Doc. 29. Ex. 9. Pg. 51-52].

The record is clear that the Appellant and Appellee's experts submitted and testified to contradicting and concurrent causes for the loss. Crucial to this inquiry is that Appellee's policy *does not contain any anti-concurrent cause provisions, nor did Appellee claim one exists within its pleadings*. [Doc. 1. Ex. 1]; [Doc. 29. Ex. 2].

On July 15, 2022, Appellee filed a motion for summary judgment in that no issues of material fact exist, and Appellant's loss falls within a policy exclusion. [Doc. 28].

On November 14, 2022, the district court granted Appellee's motion for summary judgment, entering judgment on November 15, 2022 finding, *inter alia*, "Neither Mr. Farnesi's written report nor his deposition testimony identify any cause of loss to Plaintiff's Property that is covered under the Policy." [Doc. 81].

The District Court's Order on Summary Judgment did not address or consider at all, Appellant's argument that the Concurrent Causation Doctrine should apply due to Farnesi's finding that a rainwater intrusion was the underlying cause, and thus a concurrent cause of the loss which Appellee's corporate representative admitted was not excluded under the policy. [Doc. 50. Ex. 5. Pg. 31]; [Doc. 81].

## STANDARD OF REVIEW

The district court's grant of summary judgment is reviewed by this Court de novo. *Southern-Owners Ins. Co. v. Easdon Rhodes & Assocs. LLC*, 872 F.3d 1161, 1163 (11th Cir. 2017). This Court also reviews "de novo the district court's interpretation of contract language." *Id.* at 1164.

## SUMMARY OF ARGUMENT

Appellant contends genuine issues of material fact exist as to the cause of the loss. Appellee agrees by its own admission within the introduction section of its motion for summary judgment that both Parties' experts disagree regarding the cause of the loss. [Doc. 28 29. Pg. 1].

The Florida Supreme Court has held that "when independent perils converge and no single cause can be considered the sole or proximate cause, it is appropriate to apply the concurring cause doctrine." *Sebo v. Am. Home Assurance Co*., 208 So. 3d 694, 697 (Fla. 2016). The Concurrent Causation Doctrine "permits coverage under an insurance policy when the loss can be attributed to multiple causes, 'as long as one of the causes is an insured risk.'" *Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc*., 420 F.3d 1317, 1330 (11th Cir. 2005).

"The concurrent cause doctrine mandates that coverage shall be provided when a loss would not have occurred but for the joinder of independent covered and excluded causes." *Paulucci v. Liberty Mut. Fire Ins. Co*., 190 F.Supp.2d 1312, 1318 (M.D. Fla. 2002). The concurrent cause doctrine is noted as "the prevailing standard under Florida law" in *Wallach v. Rosenburg*, 527 So.2d 1386 (Fla. 3d DCA 1988).

Despite the applicability of the Concurrent Causation Doctrine, the district court granted Appellee's motion for summary judgment which is presently on appeal. [Doc. 81]. Notably, the district court is completely silent as to the applicability of this doctrine when it rendered its decision. [Doc. 81].

Further, Appellant contends that the Mend the Hold Doctrine bars Appellee from asserting any additional policy exclusions as affirmative defense and therefore cannot now claim that Appellant's loss is excluded from other provisions of the policy. The "Mend the Hold" doctrine was created by the United States Supreme Court in 1877, a legal device used to prevent an insurance company from raising any reason not contained in the pre-suit claim denial letter as a defense in litigation. See *Harbor Ins. Co. v. Cont'l Bank Corp*., 922 F.2d 357, 362 (7th Cir. 1990).

The Mend the Hold Doctrine prohibit insurers from raising certain matters in defensive pleadings that were not initially raised in the claim denial letter even in the face of procedural rules favoring liberality of pleading amendments. *Southchase Parcel 45 Cmty. Ass'n, Inc. v. Garcia*, 844 So. 2d 650, 651 (Fla. 5th Dist. Ct. App. 2003); See also *MLB v. Morsani*, 790 So. 2d 1071, 1076 (Fla. 2001). Thus, Appellee is limited to the two (2) reasons listed in is denial letter and thus the district court can only consider these two exclusions in making its ruling on summary judgment.

## ARGUMENT

I. **THE DISTRICT COURT ERRED IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT BECAUSE THE CONCURRENT CAUSATION DOCTRINE BARS ENTRANCE OF SUMMARY JUDGMENT WHEN ONE OF THE CAUSES OF THE LOSS IS A COVERED PERIL**

If a loss was caused by two or more independent perils, then policyholders don't have to prove there was a proximate cause or that the proximate cause is a covered peril. Instead, a policyholder needs to only prove that one of the causes is a covered peril. See *Sebo v. Am. Home Assurance Co*., 208 So. 3d 694 (Fla. 2016).

The Concurrent Causation Doctrine provides that coverage may exist where an insured risk constitutes a concurrent cause of the loss even when it is not the prime or efficient cause. See *Wallach*, 527 So.2d 1386; *State Farm Mut. Auto. Ins. Co. v. Partridge*, 10 Cal.3d 94, 109 Cal.Rptr. 811, 514 P.2d 123, 133 (1973). The Concurrent Causation Doctrine "permits coverage under an insurance policy when the loss can be attributed to multiple causes, 'as long as one of the causes is an insured risk.'" *Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc*., 420 F.3d 1317, 1330 (11th Cir. 2005).

In *Sebo*, the insurance carrier denied his claim due to finding that the loss was caused by human negligence under the Faulty, Inadequate or Defective Planning exclusion. *Sebo* argued that rainwater combined with the defective construction caused the damage to his property. Because there was no reasonable way to distinguish the proximate cause of *Sebo's* property loss—the rain and construction defects acted in

concert to create the destruction of *Sebo's* home. The Florida Supreme Court thus held that summary judgment was improper under the concurrent causation doctrine.

Almost identical to *Sebo* is the case at hand. Here, Appellant's claim was denied due to the Gradual and Sudden Loss, and Faulty Planning, Construction, or Maintenance exclusions. [Doc. 36. Ex. 4. Pg. 1-2]. Here, like in *Sebo*, Appellant is claiming that rainwater combined with the defective construction caused the damage to his property and as Appellee's Corporate Representative admitted at his deposition, rainwater is not excluded under the policy. [Doc. 50. Ex. 5. Pg. 62].

As stated in *Wallach*, "[w]here weather perils combine with human negligence to cause a loss, it seems logical and reasonable to find the loss covered by an all-risk policy even if one of the causes is excluded from coverage." 527 So.2d at 1388. See also, *Paulucci v. Liberty Mut. Fire Ins. Co*., 190 F.Supp.2d 1312, 1318 (M.D. Fla. 2002). "The concurrent cause doctrine mandates that coverage shall be provided when a loss would not have occurred but for the joinder of independent covered and excluded causes." The concurrent cause doctrine is noted as "the prevailing standard under Florida law" in *Wallach v. Rosenburg*, 527 So.2d 1386 (Fla. 3d DCA 1988).

The only potential exception to the concurrent causation doctrine is in the event an insurance policy contains an "anti-concurrent cause" provision in which case the "efficient proximate cause doctrine" is applied. The efficient proximate cause doctrine "provides that where there is a concurrence of different perils, the efficient cause—the one that set the other in motion—is the cause to which the loss is

attributable." *Jones v. Federated Nat'l Ins. Co.*, 235 So. 3d 936 (Fla. Dist. Ct. App. 2018).

Here, it is undisputed that Appellee's policy does not contain any anti-concurrent cause provisions. [Doc. 1. Ex. 1]; [Doc. 29. Ex. 2].

Also, the District Court's ruling relied on a portion of Appellant's expert Mario Farnesi report and testimony at his deposition specifically stating the following:

> "Neither Mr. Farnesi's written report nor his deposition testimony identify any cause of loss to Plaintiff's Property that is covered under the Policy. The Report goes on to state that there was "a tear in the waterproofing membrane near the floor drain, which was likely caused by a crack in the concrete deck. In addition, several sections of spalling concrete deck were noted on the ceiling deck in the parking garage." *Id*.

> "Importantly, the Report concluded "[b]ased on our findings, our professional opinion is that the leak in the parking garage that short circuited the electrical components was not caused by improperly installed waterproofing but was caused by a tear in the waterproofing membrane system that occurred as a result of concrete spalling of deck below." [Doc. 81].

However, in coming to its ultimate conclusion the District Court failed to apply or analyze the Concurrent Cause Doctrine at all, it is not even mentioned in the order, nor does the District Court opine that the Concurrent Cause Doctrine is inapplicable. [Doc. 81].

The District Court admits that Farnesi's report specifically opines that:

> "Our investigation, inspection, and review of the documents provided, noted the above documented damage to the patio tile floor system and electrical components in the parking garage <u>as a result of water migration</u> caused by a crack in the building structure that damaged the patio's waterproofing system." [emphasis added]

Further, Farnesi's report analyzes the date of the weather event he believed was

the rainwater that caused the damage. [Doc. 29. Ex. 10. Pg. 20].

Moreover, Farnesi testified at his deposition that the water event on November 12, 2023, had produced enough water to cause the loss, exactly like in *Sebo*. Farnesi testified:

> 6     Q. So you believe that the water event that you
> 7     identified on November 12th had produced enough water
> 8     precipitation to cause the leak that was the cause of
> 9     the shortage in that electric box.
> 10    A. I do, just because if it would have been prior
> 11    to that I think the -- what caused the notification to
> 12    be given would have occurred earlier to that as well.
> 13    Q. Got it. And your scope of inquiry was not
> 14    anything to do with the building spalling or any of
> 15    that. That was something that you just happen to notice
> 16    on your inspection?
> 17    A. Correct. Yes. That was just something I
> 18    observed when I was there.
> 19    Q. And respectfully, you are not a structural
> 20    engineer.
> 21    A. No, I am not.

[Doc. 29. Ex. 9. Pg. 51-52].

Mr. Farnesi's report and deposition testimony establish that had it not been for the rain event on November 12, 2021 the purported damage to Plaintiff's deck/patio would not have occurred. [Doc. 29. Ex. 9,10]. The testimony also demonstrates that at the time of the loss there was no spalling. [Doc. 29. Ex. 9]. The spalling that Farnesi noticed a year and a half later when he conducted his inspection, was part of the regular maintenance of the building. *Id*. Here like in *Sebo,* there must be coverage because it was not the spalling that caused the water damage, it was the rain that caused the water damage, the spalling was ancillary to that and while a contributing factor not the sole factor.

To this point, Appellee's Corporate Representative admitted at his deposition that rainwater is not excluded under the policy.

> 22    Q Is rain an exclusion under the policy?
> 23    A No.

[Doc. 50. Ex. 5. Pg. 62].

Pursuant to the Concurrent Cause Doctrine and *Sebo* it does not matter which of the two alleged causes is more or less culpable only that one of the two causes is a covered loss. Rainwater intrusion is a covered loss not excluded under the policy and the application of the Concurrent Causation Doctrine bars the entrance of summary judgment.

## II.    THE MEND THE HOLD DOCTRINE BARS APPELLEE FROM RAISING ADDITIONAL POLICY EXCLUSIONS OUTSIDE THE DENIAL LETTER

The "Mend the Hold" doctrine was created by the United States Supreme Court in 1877, a legal device used to prevent an insurance company from raising any reason not contained in the pre-suit claim denial letter as a defense in litigation. See *Harbor Ins. Co. v. Cont'l Bank Corp*., 922 F.2d 357, 362 (7th Cir. 1990). Florida courts have traditionally, relied on loose, general notions of waiver and estoppel to prohibit insurers from raising certain matters in defensive pleadings that were not initially raised in the claim denial letter even in the face of procedural rules favoring liberality of pleading amendments. *Southchase Parcel 45 Cmty. Ass'n, Inc. v. Garcia*, 844 So. 2d 650, 651 (Fla. 5th Dist. Ct. App. 2003); See also *MLB v. Morsani*, 790 So. 2d 1071, 1076 (Fla. 2001). Further, "[c]ourts in this District have found that 'Mend the Hold'

will operate to bar a new defense only where the insurer had 'sufficient information at the time of the initial denial of coverage to have waived the additional defenses presented." (quoting *Trans Ocean Container Corp. v. Yorkshire Ins. Co. Ltd. "C" Account,* 81 F.Supp.2d 1340, 1347 (S.D. Fla. 1999)).

Here, Appellee only raised two exclusions in its denial letter, "Gradual or Sudden Loss" and "Faulty Planning, Construction, or Maintenance." [Doc. 36. Ex. 4. Pg. 1-2].  Appellee also admitted in its denial letter that they were able to do a full and complete investigation. [Doc. 36. Ex. 4. Pg. 1-2]. Appellee had an engineer go to the property to conduct an inspection and investigation. [Doc. 29. Ex. 11]. Despite issuing a clear and unequivocal denial letter, Appellee attempts to introduce additional policy exclusions through four (4) affirmative defenses in its Answer. [Doc. 1. Ex. 1].

Appellee cannot argue that it did not conduct a thorough investigation or did not have all the facts available to it at the time of the denial because the denial letter itself also admits that a thorough investigation took place including an inspection by its retained causation expert Jeffrey Bradley. [Doc. 36. Ex. 4. Pg. 1-2].

> "We regret that you sustained this loss to your property. Please be assured that we have undertaken a **thorough investigation** to determine the cause of the loss and applicable coverage under your Masterpiece Policy. Unfortunately, after careful consideration of the facts of the loss and the policy terms, Federal has determined there is a partial denial for your loss. We would like to take this opportunity to fully explain the basis for our decision. [Emphasis added]

Further, Appellee's Corporate Representative testified that it is only relying on

Mr. Bradley's report to support its Affirmative Defenses and Mr. Bradley's report does not discuss the First, Third, Fifth, and Sixth Affirmative Defenses. [Doc. 29. Ex. 11]. It only discusses the two affirmative defenses listed in the denial letter.

> 6    Q Are there any other facts aside from those
> 7    observations and the Donan report that Great Northern
> 8    Insurance is relying on in asserting that affirmative
> 9    defense?
> 10    A We are relying on these conclusions of the
> 11    engineer.

[Doc. 50. Ex. 5. Pg. 121].

As such, Appellee can only assert exclusions for Gradual or Sudden Loss" and "Faulty Planning, Construction, or Maintenance" and is barred from asserting that any other exclusions apply such as surface water.

## CONCLUSION

Based on the foregoing, the Order on Appellee's Motion for Summary Judgment should be quashed and reversed, and for all other and further relief this Honorable Court deems just and proper.

Respectfully Submitted,

/s/ Josef Timlichman

Josef Timlichman, Esq.
Florida Bar No.: 121265
JOSEF TIMLICHMAN LAW, PLLC
2999 NE 191st Street, Suite 530
Aventura, FL 33180
Phone: (305) 847-2441
Fax: (305) 847-2441
josef@lawnowfl.com

## **CERTIFICATE OF COMPLIANCE WITH RULE 32(g)(1)**

I certify that this document complies with the type-volume limitation set forth

in FRAP 32(g)(1). This documents contains 5301 words.

Respectfully submitted,

By: */s/ Josef Timlichman*
Josef Timlichman, Esq.
Florida Bar No.: 121265

Josef Timlichman Law, PLLC.
Attorneys for Plaintiff
2999 NE 191st Street, Suite 530
Aventura, FL 33180
Phone: (305) 748-3789
Facsimile: (305) 847-2441
Josef@lawnowfl.com

**CERTIFICATE OF SERVICE**

I hereby certify that on May 11, 2023, I electronically filed the foregoing document with the Clerk to the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the below Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

**SERVICE LIST**

**Hicks, Porter, Ebenfeld & Stein P.A.**
Counsel for Appellee
799 Brickell Plaza, 9th Floor
Miami, FL 33131

Dinah Stein, Esq.
Florida Bar No. 98272