[DO NOT PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

____________________

No. 22-14129

Non-Argument Calendar

____________________

LEIGH ROTHSCHILD,

Plaintiff-Appellant,

*versus*

GREAT NORTHERN INSURANCE COMPANY,

Defendant-Appellee.

____________________

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:21-cv-23148-MGC

____________________

Before LUCK, ABUDU, and ANDERSON, Circuit Judges.

PER CURIAM:

Leigh Rothschild appeals the district court's summary judgment for Great Northern Insurance Company on his breach of contract claim. We affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Rothschild owns a condominium unit in a four-story complex, and his unit sits atop a common-area parking garage. The entrance to Rothschild's unit is adjacent to a patio with tile flooring. Rothschild purchased an all-risk insurance policy for his unit from Great Northern. The policy afforded coverage for any "occurrence," which it defined as "a loss or accident," including "[c]ontinuous or repeated exposure to substantially the same general conditions."

The policy also had two exclusions that are relevant here. One of those exclusions was for "[g]radual or sudden loss." It provided that Great Northern would not "provide coverage for the presence of wear and tear, gradual deterioration, rust, bacteria, corrosion, dry or wet rot, or warping, however caused, or any loss caused by wear and tear, gradual deterioration, rust, bacteria, corrosion, dry or wet rot, or warping." The policy separately excluded losses caused by "[f]aulty planning, construction[,] or maintenance."

In November 2020, soon after a tropical storm, a maintenance staffer for the complex told Rothschild that water was leaking into the garage from his patio. The leak was discovered after an electrical box in the garage short-circuited. The complex's management personnel told Rothschild that it was his responsibility to fix the leak. So he filed a claim with Great Northern, saying that his patio tile assembly was damaged.

Great Northern retained forensics engineer Jeffrey Bradley to investigate Rothschild's claim. Bradley opined that the patio leak was caused by improper installation of its waterproofing layer. Citing Bradley's opinion, Great Northern denied coverage for the patio tiles. Its denial letter explained that both the gradual or sudden loss exclusion and the faulty planning, construction, or maintenance exclusion applied. Great Northern did partially extend coverage for repairs needed in the garage. But because the estimated cost of repairs did not exceed Rothschild's deductible, it paid nothing on the claim.

Rothschild retained an expert of his own, Mario Farnesi. Farnesi inspected the property in 2022 and prepared a report after finding two types of damage: first, "[d]amaged patio tile assembly," and second, "[w]ater damaged electrical components in the parking garage." In his view, the patio's leak "was not caused by improperly installed waterproofing." He found that "water migration" into the garage was "caused by a crack in the building structure that damaged the patio's waterproofing system." He cited how he observed "several sections of spalling concrete deck . . . on

the ceiling deck in the parking garage" below Rothschild's patio. The leak, Farnesi explained, "was caused by a tear in the waterproofing membrane system that occurred as a result of concrete spalling of the concrete deck."

Farnesi later expounded on his observations during a deposition, repeating that he saw "several spalling areas" in the garage. He explained that "spalling . . . in a nutshell" is "basically when you have the rebar within concrete, when it gets exposed to water and begins to rust, that rust[] . . . expands the rebar which, in turn, begins to push out and crack the concrete that is around it." He had observed rust during his inspection. So, "essentially," Farnesi believed a crack formed in the concrete below Rothschild's patio that "went up through the deck layer and tore the [waterproofing] membrane." He couldn't opine as to exactly when the spalling began, although he thought it likely started within the four years preceding his inspection. He said that in the usual case, "you really don't notice [spalling] until the damage is basically well beyond . . . a point where you can really correct it." That's because spalling occurs over a period of time before any damage to the concrete becomes visible.

Rothschild sued Great Northern in state court for breach of contract. Great Northern removed the case to federal court, and the parties filed cross motions for summary judgment. In support of its motion, Great Northern argued that Rothschild could not show any covered cause of loss to his property. It contended that Farnesi opined the cause of Rothschild's loss was spalling and that

he opined the spalling was caused by expansion of rusty rebar. And because he also opined that spalling occurs over a period of time and is not a sudden loss, Great Northern argued that the gradual or sudden loss exclusion necessarily barred coverage. Great Northern separately argued it was entitled to summary judgment based on two other exclusions: the one for faulty construction or maintenance and another for accumulated surface water, which was not raised in its denial letter. It also argued that Rothschild couldn't prove that the loss, if any, occurred while the policy was effective, that he lacked any insurable interest in the garage, that he couldn't prove damages, and that any damages didn't exceed the policy deductible.

As to the gradual or sudden loss and faulty construction or maintenance exclusions, Rothschild responded that Farnesi's report and testimony created a genuine factual dispute as to what caused the tile damage. He contended Farnesi actually opined that rainwater was the cause of the leak and rain is not an excluded peril. To the extent there was evidence of excluded causes, Rothschild argued that Florida's concurrent cause doctrine applied. Rothschild argued that the "mend the hold" doctrine barred Great Northern from relying on the accumulated surface water exclusion,[1] citing how Great Northern didn't cite that exclusion in its

---

[1] The "mend the hold" doctrine reflects that "[w]here a party gives a reason for his conduct . . . , he cannot, after litigation has begun, change his ground, and put his conduct upon another and a different consideration." *Ohio & M.R. Co. v. McCarthy*, 96 U.S. 258, 267–68 (1877).

coverage denial letter. Lastly, Rothschild argued that he offered enough evidence of damages exceeding the deductible to create a genuine dispute of material fact.

The district court granted Great Northern's motion and denied Rothschild's as moot. It found that Rothschild's response did not comply with Federal Rule of Civil Procedure 56(c)(1)(A) because, although his statement of facts included citations to the record, his opposition brief didn't include any. *See* Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). The district court also explained that Farnesi's report and testimony did not show any covered peril caused damage to the property. It cited how Farnesi opined the cause of patio damage was concrete spalling. And because Farnesi explained that spalling occurs over a period of time, the district court reasoned the gradual or sudden loss exclusion was triggered. Finally, the district court rejected Rothschild's reliance on the mend the hold doctrine, reasoning that Great Northern's coverage denial letter expressly relied on the gradual or sudden loss exclusion.

The district court entered final judgment in Great Northern's favor. Rothschild timely appealed.

## STANDARD OF REVIEW

We review de novo a district court's order granting summary judgment. *See Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005). Summary judgment is appropriate "if

the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). We view all the evidence and draw all reasonable inferences in the nonmovant's favor, but "only 'to the extent supportable by the record.'" *Penley v. Eslinger*, 605 F.3d 843, 848 (11th Cir. 2010) (quoting *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007)).

**DISCUSSION**

On appeal, Rothschild argues he offered sufficient evidence that rainwater combined with the defective construction to damage his patio tile assembly.[2] That means, in his view, Florida's concurrent cause doctrine precludes summary judgment for Great Northern notwithstanding the gradual or sudden loss exclusion. He faults the district court's finding that he didn't comply with rule 56(c)(1)(A), pointing out that his statement of facts included record citations. Great Northern responds that Rothschild didn't comply with rule 56(c)(1)(A), that there is no genuine dispute that the gradual or sudden loss exclusion barred coverage, and that we can alternatively affirm on the other grounds raised in its summary judgment motion.

We will assume that Rothschild's response complied with rule 56(c)(1)(A) because, even considering his cited evidence, he failed to show any covered loss. As evidence that his patio was damaged by a covered peril—specifically, a rain event—Rothschild

---

[2] Rothschild concedes in his reply brief that the only relevant damage is to the patio's tiles and waterproofing membrane system, not the garage damage.

only cited Farnesi's report and deposition testimony. But Farnesi never opined that rain damaged the patio or its membrane system. Farnesi opined that the crack "in the [patio's] waterproofing membrane system . . . occurred *as a result of concrete spalling* of the concrete deck below" the patio. He explained that spalling "in a nutshell" is caused by the expansion of rusty rebar that "push[es] out" and cracks the concrete over a prolonged period of time, rather than suddenly. And he actually observed rust during his inspection. Thus the spalling falls squarely within the policy's gradual or sudden loss exclusion. That exclusion expressly provides Great Northern wouldn't cover losses for the presence of "gradual deterioration, rust, . . . or warping," nor "*any loss caused by*" those conditions.

Rothschild contends this case is "almost identical" to *Sebo v. American Home Assurance Co.*, 208 So. 3d 694 (Fla. 2016). But we disagree. The Supreme Court of Florida applied the concurrent cause doctrine in *Sebo* because there was evidence that "rainwater and hurricane winds combined with . . . defective construction" to damage insured property. *Id.* at 699–700 ("[W]here weather perils combine with human negligence to cause a loss, it seems logical and reasonable to find the loss covered by an all-risk policy even if one of the causes is excluded from coverage." (citation omitted)). The problem for Rothschild is that, unlike the *Sebo* plaintiff, he offered no evidence that a covered peril combined with an excluded peril to damage his patio. Farnesi pointed to one—and only one—cause of patio damage: spalling. The mere fact that rainwater was

able to pass through the cracked patio to damage electrical components in the garage doesn't show rainwater damaged the patio too.

At best, it is reasonable to infer from Farnesi's findings that water intrusion over a prolonged period of time contributed to the spalling, which in turn caused the patio damage. Farnesi did explain during his deposition that spalling usually happens when rebar "gets exposed to water." But to the extent the spalling below Rothschild's patio depended on water exposure, the concurrent cause doctrine still wouldn't save his claim. The doctrine only applies if damaging forces "are *not* related and dependent." *Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc.*, 420 F.3d 1317, 1330 (11th Cir. 2005) (emphasis added) (quoting *Transamerica Ins. Co. v. Snell*, 627 So. 2d 1275, 1276 (Fla. Dist. Ct. App. 1993)).

Because there is no genuine dispute that the gradual or sudden loss exclusion applied to Rothschild's claim, there is no need for us to address Great Northern's reliance on other policy exclusions. Thus there's also no need for us to resolve Rothschild's argument that the mend the hold doctrine barred it from asserting different exclusions during the litigation.

The district court's order granting summary judgment for Great Northern is **AFFIRMED.**